1
2
3
4   *E-FILED - 8/2/10*
5
6
7
8   IN THE UNITED STATES DISTRICT COURT
9   FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| LANARE WISE, | No. C 09-0268 RMW (PR) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |
| vs. | |
| WARDEN JAMES WALKER, | |
| Respondent. | |

Petitioner, a state prisoner proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the petition should not be granted. Respondent has filed an answer addressing the merits of the petition. Petitioner filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and denies the petition.

## BACKGROUND[1]

Around 1:30 a.m. on February 1, 2004, Siara Spriggs and her three friends, Stephanie Franklin, Lendell Waters, and George Carnegie drove to the Giant Burger in Oakland. (Resp. Ex. A at 1.) Waters got out to order food and began talking to Larona Jones, a girl that he knew.

---

[1] The facts of this case are taken from the California Court of Appeal opinion in People v. Wise, No. A115148, 2007 WL 4479063 (Cal. App. 1 Dist. Dec. 21, 2007). (Resp. Ex. A.)

(Id.) Jones was the girlfriend of petitioner's co-defendant, Lamar Williams. (Id.) Williams became irritated that Jones was talking to Waters and told her not to talk to anyone else while she was with him. (Id.) Then Williams felt that Waters "disrespected" him and when Waters apologized, Williams refused to shake his hand and called Waters a "Bitch Ass Nigger." (Id. at 1-2.)

Williams then phoned petitioner and asked him to "bring the gauge" to Giant Burger because Williams had "just gotten into it with someone." (Id. at 2.) Jideofor Ajaelo drove petitioner, Mike Anderson, and Alexander Gomez to meet Williams at Giant Burger. (Id.) Petitioner brought a pump action shotgun. (Id.) Williams got into the rear right passenger seat of Ajaelo's car. (Id.) They were driving down 81st Avenue when they spotted Spriggs' car. (Id.) Shots were fired from Ajaelo's car and eleven 9mm casings were found on 81st Avenue. (Id.) Four more casings were found on San Leandro Boulevard, where Ajaelo had pulled up beside Spriggs. (Id.) At some point, Williams told petitioner to shoot Spriggs' tires. (Id.) Petitioner complied, but the shot missed and hit the ground instead. (Id.) When petitioner tried to fire again, the shotgun jammed. (Id.)

Spriggs drove the car around the corner and Ajaelo continued to drive the car straight. (Id.) Spriggs tried to run but fell down because she had been shot in the leg. (Id.) Franklin was found dead in the front passenger seat. (Id.) Waters had been shot in the arm and leg. (Id.) Carnegie had no injuries. (Id.) All the casings found were fired from the same weapon. (Id.)

Petitioner and his co-defendants were charged with the murder of Franklin, with special circumstances of murder by shooting a firearm from a motor vehicle, and attempted murder of Spriggs, Waters, and Carnegie. (Id.) Petitioner was tried separately from his co-defendants. (Id.) The jury found petitioner guilty of first degree murder with special circumstances and three counts of attempted murder. (Id. at 2-3.) Petitioner was sentenced to 105 years to life without the possibility of parole. (Id. at 3.)

On direct appeal, the state appellate court affirmed the judgment, and the state supreme court denied the petition for review. Thereafter, petitioner filed an unsuccessful habeas petitions in all three levels of the California courts. The instant federal petition was filed on January 22,

1  2009.

2  **DISCUSSION**

3  **A.  Standard of Review**

4          This court may entertain a petition for writ of habeas corpus "in behalf of a person in

5  custody pursuant to the judgment of a state court only on the ground that he is in custody in

6  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

7  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court

8  may not grant a petition challenging a state conviction or sentence on the basis of a claim that

9  was reviewed on the merits in state court unless the state court's adjudication of the claim

10  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

11  clearly established federal law, as determined by the Supreme Court of the United States; or (2)

12  resulted in a decision that was based on an unreasonable determination of the facts in light of the

13  evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  The first prong applies

14  both to questions of law and to mixed questions of law and fact, <u>Williams v. Taylor</u>, 529 U.S.

15  362, 384-86 (2000), while the second prong applies to decisions based on factual determinations,

16  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

17          "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

18  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

19  law or if the state court decides a case differently than [the] Court has on a set of materially

20  indistinguishable facts."  <u>Williams</u>, 529 U.S. at 412-13.  A state court decision is an

21  "unreasonable application of" Supreme Court authority, falling under the second clause of

22  § 2254(d)(1), if the state court correctly identifies the governing legal principle from the

23  Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's

24  case."  <u>Id.</u> at 413.  The federal court on habeas review may not issue the writ "simply because

25  that court concludes in its independent judgment that the relevant state-court decision applied

26  clearly established federal law erroneously or incorrectly."  <u>Id.</u> at 411.

27          Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

28  will not be overturned on factual grounds unless objectively unreasonable in light of the

1  evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340.  The court must

2  presume correct any determination of a factual issue made by a state court unless the petitioner

3  rebuts the presumption of correctness by clear and convincing evidence.  See 28 U.S.C. §

4  2254(e)(1).

5          In determining whether the state court's decision is contrary to, or involved an

6  unreasonable application of, clearly established federal law, a federal court looks to the decision

7  of the highest state court to address the merits of a petitioner's claim in a reasoned decision.

8  LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

9  **B.     Petitioner's Claims**

10         Petitioner raises the following claims[2] in his federal habeas petition: (1) ineffective

11  assistance of counsel for failing to call an expert witness to testify about coerced involuntary

12  confessions (Petition, Claim 1) and failing to object to the admission of a hearsay statement of

13  co-defendant Williams (Petition, Claim 9); (2) prosecutorial misconduct for presenting false

14  testimony (Petition, Claim 2) and ineffective assistance of counsel for failing to challenge this

15  (Petition, Claim 6); (3) prosecutorial misconduct when prosecutor gave his personal opinion

16  during opening and closing statements (Petition, Claim 3); (4) trial court error for failing to

17  clarify instructions for the jury (Petition, Claim 7); (5) trial court error for giving incomplete

18  instructions on aiding and abetting, and, in the alternative, ineffective assistance of counsel for

19  failing to request same (Petition, Claim 8); (6) jury instruction regarding the "natural and

20  probable consequences" relieved the prosecution of proving all the necessary elements (Petition,

21  Claim 10); (7) trial court error for failing to resolve petitioner's mental incompetency issue at

22  sentencing (Petition, Claim 5); (8) ineffective assistance of appellate counsel (Petition, Claim 4);

23  and (9) cumulative error (Petition, Claim 11).

24         1.      Ineffective assistance of counsel

25         A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

26

27

28         [2] For organizational and efficiency purposes, the court has rearranged and grouped
    petitioner's claims in a different manner than presented in the petition.

1  Amendment right to counsel, which guarantees not only assistance, but effective assistance of

2  counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any

3  claim of ineffectiveness must be whether counsel's conduct so undermined the proper

4  functioning of the adversarial process that the trial cannot be relied upon as having produced a

5  just result.  Id.

6      In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner

7  must establish two things.  First, he must establish that counsel's performance was deficient, i.e.,

8  that it fell below an "objective standard of reasonableness" under prevailing professional norms.

9  Id. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient

10  performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional

11  errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable

12  probability is a probability sufficient to undermine confidence in the outcome.  Id.

13                    A.    Failure to call expert to testify

14      Prior to trial, counsel and petitioner consulted with and planned to call Professor Richard

15  Ofshe, an expert witness, who would testify about coerced involuntary confessions.  (Petition,

16  Attachment A.)  According to counsel, Ofshe's testimony was "highly relevant and persuasive in

17  petitioner's case regarding a coerced involuntary confession," and counsel believed that Ofshe

18  would be a "keystone" of petitioner's defense.  (Id.)  Petitioner claims that counsel was

19  ineffective because he failed to call Ofshe to testify about coerced confessions.  (Id.)

20      The California Supreme Court's summary denial of this claim was neither contrary to nor

21  an unreasonable application of Strickland.  Petitioner has not identified any of Ofshe's

22  anticipated testimony that supports his claim or that might have led to a finding that his

23  statements were coerced.  That petitioner or counsel believed Ofshe's testimony was relevant or

24  persuasive is insufficient.  See James v. Borg, 24 F.2d 20, 26 (9th Cir. 1994) ("Conclusory

25  allegations which are not supported by a statement of specific facts do not warrant habeas

26  relief.").  In the absence of any details concerning the expert's anticipated testimony, petitioner

27  cannot show that trial counsel's performance was deficient.  Indeed, it has been held that

28  "[s]peculation about what an expert could have said is not enough to establish prejudice."

1   Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997); see also Gonzalez v. Knowles, 515 F.3d

2   1006, 1016 (9th Cir. 2009).

3          In addition, as noted by respondent, defense counsel's decision not to call an expert

4   witness on coerced confessions appears to be reasonable in light of the defense theory presented

5   at trial.  Petitioner gave three taped interviews while in custody three weeks after the shootings.

6   (RT 592-94, 629, 631.)  In the first interview, petitioner said he did not see anyone with a gun

7   but heard gunshots that he assumed came from the car.  (Resp. Ex. G at 9-11.)  In the second

8   interview, taken approximately 24 hours later after the petitioner learned Williams told the police

9   that petitioner had a weapon during the shooting, petitioner admitted that two guns were fired

10  during the shooting.  (Resp. Ex. H at 8.) Petitioner knew that one was a handgun because one of

11  the shells landed on his neck, at which point, petitioner ducked and put his head between his

12  legs.  (Id.)  Petitioner did not know that a shotgun had been fired until the next morning when he

13  found a shotgun shell in the car.  (Id. at 11.)  Not until the third interview, taken approximately

14  four hours later, after petitioner learned that the police might have found some gun residue on his

15  sweatshirt, petitioner admitted that he brought the shotgun to Giant Burger.  (Resp. Ex. I at 4.)

16  Petitioner admitted that he tried to shoot out a back tire after Williams told him to.  (Id. at 6-7.)

17  Petitioner said that he tried to shoot again, but the shotgun would not fire.  (Id. at 7-8.)  Petitioner

18  stated that he fired because he thought if he didn't, Williams would shoot him.  (Id. at 24.)  In

19  closing, defense counsel's theory was that petitioner only fired the shotgun because he was

20  afraid for his life and that the police interviews did not elicit enough information to confirm that

21  petitioner was an aider and abettor because there was no evidence that petitioner knew what

22  Williams' intentions were.  (RT 672, 761, 763.)

23         In light of petitioner' defense theory, it was reasonable for counsel not to call Ofshe to

24  testify about coerced confessions because the theories were incompatible.  Counsel elected to

25  persuade the jury that petitioner's statements to the police did not conclusively show his

26  involvement as an aider and abettor and even if the jury concluded that petitioner fired one time,

27  petitioner only did so out of fear that Williams would retaliate.  To call Ofshe to testify would

28  have required the jury to conclude that petitioner's statements to the police were untrue, which

1    would have been in conflict with the theory of defense.  Thus, defense counsel's decision not to

2    call Ofshe to testify was reasonable.  <u>Strickland</u>, 466 U.S at 690.  Petitioner is not entitled to

3    habeas relief on this claim.

4                    B.        <u>Failure to object to hearsay</u>

5            During petitioner's second police interview, which was played for the jury, one officer

6    said, "Ok.  And . . . I played you [] . . . just a few seconds of a tape of Lamar Williams talking

7    about your involvement and your possession of a weapon durin' this shooting, is that correct?" to

8    which petitioner answered, "Yes."  (Resp. Ex. A at 12.)  Petitioner claims that counsel's failure

9    to object to the reference to Williams' statement rendered counsel's assistance ineffective.

10          The California Court of Appeal rejected this claim.  It concluded that counsel reasonably

11   elected not to object to admission of Williams' statement because it was consistent with his

12   theory of the case that Williams was the instigator and the shooter and that petitioner only tried

13   to the fire the shotgun because he was afraid Williams would retaliate against him otherwise.

14   (<u>Id.</u>) at 13.)  Further, the Court determined that there would be no point in objecting to the

15   statement because counsel knew that in his later interview, petitioner himself admitted that he

16   brought the shotgun.  (<u>Id.</u>)

17          After reviewing the record, the court agrees with the state appellate court.  The California

18   Court of Appeal's decision was not contrary to or an unreasonable application of clearly

19   established federal law.  28 U.S.C. § 2254(d).

20                    2.        <u>Prosecutorial misconduct for presenting false evidence</u>

21          Prior to trial, counsel requested and received an order releasing for inspection the

22   shotgun used in the underlying crime.  (Petition, Attachment B at 1.)  The order directed that a

23   Winchester Shotgun 12 Gauge 1300 Pump Action Serial Number L3473982 and other items be

24   released to counsel for testing and when counsel was finished with the items, it was be returned

25   to the District Attorney Property Room.  (Petition, Ex. D.)  At trial, Officer Viglinezone testified

26   that he recovered the shotgun exhibited at trial from the suspect's car and that the shotgun had

27   the serial number L3473962.  (RT 501-02, 503.)  Also at trial, Officer Moore, a firearms expert,

28   testified that he test-fired a shotgun with the serial number L3473962 and that it fired once and

1   then misfired the second time. (RT 560.) Officer Moore also testified about a 32-page report

2   originating from Forensic Analytical, an independent lab, which was addressed to defense

3   counsel. (RT 561-62.) Moore testified that he found no discrepancies between his analysis of

4   the weapon and the lab's analysis of the weapon. (RT 562.)

5          Petitioner claims that the pre-trial order for release of evidence for inspection and the

6   shotgun about which the officers testified did not have matching serial numbers and therefore,

7   the prosecution knowingly presented false testimony. (Petition, Attachment B at 4-5.)

8   Petitioner also claims that he received a declaration from the lab director at the independent lab

9   which stated that it did not issue a 32-page report as testified at trial. (Id. at 4.) Petitioner

10  concludes that both the shotgun and the lab report which were presented at trial were false

11  evidence.

12         The California Supreme Court denied this claim without comment.

13         Prosecutorial misconduct is cognizable in federal habeas corpus. The appropriate

14  standard of review is the narrow one of due process and not the broad exercise of supervisory

15  power. See Darden v. Wainwright, 477 U.S. 168, 181 (1986). When a prosecutor obtains a

16  conviction by the use of testimony which he knows or should know is perjured, it has been

17  consistently held that such conviction must be set aside if there is any reasonable likelihood that

18  the testimony could have affected the judgment of the jury. See United States v. Agurs, 427 U.S.

19  97, 103 (1976). The same result obtains when the prosecutor, although not soliciting false

20  evidence, allows it to go uncorrected when it appears. See Napue v. Illinois, 360 U.S. 264, 269

21  (1959). In order to prevail on a claim based on Agurs/Napue, the "petitioner must show that (1)

22  the testimony (or evidence) was actually false, (2) the prosecution knew or should have known

23  that the testimony was actually false, and (3) that the false testimony was material." United

24  States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003) (citing Napue, 360 U.S. at 269-71); see

25  Schad v. Ryan, 595 F.3d 907, 916 (9th Cir. 2010) (per curiam) (finding no prosecutorial

26  misconduct where it was not entirely clear that prosecution witness had lied or, assuming he did,

27  that the state knew or should have known that his testimony was false.)

28         Regarding the shotgun, respondent claims that L3473982 was the only shotgun connected

1   with petitioner's case and suggests that the testifying officers misread the "8" for a "6" in the

2   serial number while on the witness stand and that the differing serial numbers was an inadvertent

3   mistake rather than "false evidence."  Respondent submits a declaration signed by the prosecutor

4   in the underlying trial who stated, under penalty of perjury, that the shotgun introduced at trial

5   was the same shotgun that was confiscated as evidence. (Resp. Ex. J.)  The prosecutor declared

6   that the shotgun currently stored in the Alameda County Superior Court with the serial number

7   L3473982, was the same shotgun introduced at trial.  (Id.)  Further, respondent argues that

8   defense counsel did not object to its admission and there was no chain-of-custody issue.  In light

9   of the prosecutor's declaration, petitioner has not shown that the shotgun admitted at trial was

10  false.  See Zuno-Arce, 339 F.3d at 889.  Prosecutors will not be held accountable for

11  discrepancies in testimony where there is no evidence from which to infer prosecutorial

12  misconduct and the fairness of the trial was not materially affected.  See United States Zuno-

13  Arce, 44 F.3d 1420, 1423 (9th Cir. 1995).  Petitioner must establish a factual basis for attributing

14  knowledge that the testimony was perjured to the government.  See Morales v. Woodford, 388

15  F.3d 1159, 1179 (9th Cir. 2004) ("essence of the due process violation is misconduct by the

16  government, not merely perjury by a witness").  Here, petitioner has only alleged that because

17  the serial numbers did not match, the prosecution must have known that the evidence was false.

18  This is insufficient.  See id.

19        Regarding the lab report, respondent submits the 32-page report to which petitioner

20  refers. (Resp. Ex. L.)  Petitioner submits a copy of the 2-page report attached to a letter from the

21  lab that averred there was no copy of any other report tendered to defense counsel dated

22  November 10, 2005. (Petition, Ex. J.)  Respondent submits the same 2-page report (Resp. Ex. L)

23  and notes that the 32-pages admitted at trial included the same 2-page report and 30 pages of

24  photographs and notes. (Resp. Ex. L.)  Considering the documents submitted, petitioner has not

25  demonstrated that this evidence was actually false.  See Zuno-Arce, 339 F.3d at 889.  Thus,

26  petitioner's Agurs/Napue claim fails.

27        Relatedly, because the court concludes that the prosecutor did not commit misconduct by

28  presenting false evidence, i.e., the shotgun and lab report, counsel could not have rendered

1 | ineffective assistance for failing to object to such evidence.

2 | Accordingly, the state court's decision rejecting these claims was not contrary to or an

3 | unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d).

4 | 3.     Prosecutorial misconduct for stating personal opinion

5 | Petitioner cites 22 instances of alleged misconduct where he claims that the prosecutor

6 | improperly gave his personal opinion during opening and closing arguments.  (Petition,

7 | Attachment C at 2-3.)  For example, petitioner alleges the prosecutor gave his personal opinion

8 | by stating, "She sees a shot gun sticking out of the right rear passenger window" (RT 688); "A

9 | human being was killed, that been [sic] proven beyond a reasonable doubt, and three, the killing

10 | was unlawful, thats [sic] been proven beyond a reasonable doubt, and three, the killing was done

11 | with malice aforethought, that's been proven beyond a reasonable doubt" (RT 693); and "And

12 | when he picks up that shotgun points it out that car and fires it, it's game over he's on the hook

13 | for first degree murder" (RT 699-700).

14 | The California Supreme Court denied this claim without comment.

15 | A prosecutor may not express his personal opinion of the defendant's guilt.  United

16 | States v. Moreland, 604 F.3d 1058, 1072 (9th Cir. 2010) (citing United States v. McKoy, 771

17 | F.2d 1207, 1211 (9th Cir. 1985).  Further, a prosecutor may not express his opinion of the

18 | seriousness of the defendant's crime before the jury.  McKoy at 1211.  The prosecutor may,

19 | however, make comments about the character of one who would commit the crime at issue.  See,

20 | e.g., Turner v. Marshall, 63 F.3d 807, 818 (9th Cir. 1995) (no due process violation arising from

21 | prosecutor's comments that perpetrator of crime a "monster of a human being"), overruled on

22 | other grounds by Tolbert v. Page, 182 F.3d 677, 685 (9th Cir. 1999) (en banc).

23 | During arguments, the prosecutor has wide latitude, including the freedom to argue

24 | reasonable inferences  based on the evidence.  Menendez v. Terhune, 422 F.3d 1012, 1037 (9th

25 | Cir. 2005). "Counsel are given latitude in the presentation of their closing arguments, and courts

26 | must allow the prosecution to strike hard blows based on the evidence presented and all

27 | reasonable inferences therefrom."  Ceja v. Stewart, 97 F.3d 1246, 1253-54 (9th Cir. 1996).  The

28 | court views a prosecutor's challenged remarks in the context of the entire trial.  See Greer v.

1  Miller, 483 U.S. 756, 765-66 (1987).

2       In essence, petitioner's claims regarding this issue is that the prosecutor in opening and

3  closing "gave his personal opinion" and argued for interpretations of the evidence that would

4  favor petitioner's guilt, something he was entitled to do as long as there was evidence to support

5  his version, as there was.  The claims of prosecutorial misconduct are without merit.  Moreover,

6  petitioner's own statements to the police as well as the evidence admitted at trial was so strong

7  that the prosecutor's comments were unlikely to have any effect on the jury.  Moreland, 604 F.3d

8  at 1073.  In addition, the jury was properly instructed that arguments and statements by counsel

9  are not evidence.  Finally, petitioner has failed to demonstrate that the prosecutor's statements

10  affected the outcome of the proceedings.

11       Accordingly, the state court's decision rejecting these claims was not contrary to or an

12  unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d).

13       4.      Failure to clarify instructions

14       Petitioner claims that the court failed to clarify the jury's confusion over the jury

15  instructions on the elements of the crime.  (Petition, Attachment G at 1.)  On June 20, 2005, the

16  jury its first note to the trial court during its deliberations.  The first note read, "CALJIC 3.02

17  Principals -- liability for natural and probable consequences.  Please clarify & define the above

18  mentioned cite of the law."  (CT 808).  The court responded, "What do you mean by 'clarify and

19  define the above mentioned cite of the law'?"  (Id.)  The jury did not submit an answer.

20       On June 21, 2005, the jury sent another note to the court.  "Please explain to the jury

21  what elements must all be in place to constitute a drive by?"  (CT 811.)  The court instructed the

22  jury to refer to CALJIC 8.25.1.  (CT 812.)  That same day, the jury sent a third note that stated,

23  "What are all the elements that differentiate first degree and second degree murder?"  (CT 813.)

24  The court instructed the jury to refer to CALJIC instructions starting with 8.00.  (CT 814.)  Then,

25  the jury submitted a fourth note saying, "We the jury would like to formally request to reconvene

26  all parties to the courtroom to have the judges explain all of the charges to the courtroom jury.

27  Many of the jurors are very confused and unclear about the charges."  (CT 815.)

28       The next morning, with agreement from the parties, the trial court prepared a corrected

1   copy of the information along with a summary of the charges.  After assembling the jury, the

2   trial court read aloud the corrected information and gave the jury a summary of the charges.  The

3   court told the jury that it would give the jury both the corrected information and the summary of

4   charges and, if the jury still had questions, it could submit them to the court.  (RT 829-834.)

5   Thereafter, the jury submitted another question.  "In the first degree murder charge against Mr.

6   Wise, how many of the four True/False statements, if any, need to be true in order for the jury to

7   find him guilty of [the] first degree murder charge?" (CT 819.)  The court responded, "The

8   murder charge is independent and distinct from the clauses.  You can find him guilty of first

9   degree murder and find that none, some or all of the clauses are true or not."  (Id.)  The jury's

10  last question was, "Do we have to unanimously agree on each true/not true statements in order to

11  support the 1st degree murder charge?"  (CT 821.)  The court responded, "No -- again the

12  murder charge stands alone, and the clauses stand alone.  One is not dependent on the other.

13  However, any decision on the murder charge and the clauses must be unanimous."

14      Here, the California Court of Appeal rejected petitioner's claim, concluding that a trial

15  court is responsible for considering how it can best aid the jury in determining how to respond to

16  a jury note.  (Resp. Ex. A at 5.)  The appellate court noted that a trial court is tasked with

17  deciding whether further explanation is needed or whether reiteration of the given instructions

18  would suffice.  (Id.)  The state appellate court examined the trial court's response to each note

19  and concluded that it responded appropriately according to state law.  (Id. at 5-6.)

20      "When a jury makes explicit its difficulties, a trial judge should clear them away with

21  concrete accuracy."  Bollenbach v. United States, 326 U.S. 607, 612-13 (1946).  The trial judge

22  has a duty to respond to the jury's request for clarification with sufficient specificity to eliminate

23  the jury's confusion.  See Beardslee v. Woodford, 358 F.3d 560, 574-75 (9th Cir. 2004)

24  (harmless due process violation occurred when, in responding to request for clarification, court

25  refused to give clarification and informed jury that no clarifying instructions would be given).

26  The formulation of the response to a jury's question is a stage at which defense counsel can

27  make a valuable contribution.  See Musladin v. Lamarque, 555 F.3d 830, 839-41 (9th Cir. 2009)

28  (discussing importance of defense counsel's participation in the formulation of a response to a

1    jury question).  Just as a jury is presumed to follow its instructions, it is presumed to understand

2    a judge's answer to a question.  <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000).  In order to

3    prevail on his claim, petitioner must show that the trial court's error "so infected the entire trial

4    that the resulting conviction violates due process."  <u>Beardslee</u>, 358 F.3d at 573-74.  Petitioner

5    must demonstrate a "reasonable likelihood" that the jury applied the instruction in a way that

6    violated the Constitution.  <u>Id.</u> at 574.

7           Petitioner offers no support for the assertion that the jury remained confused after the

8    trial court responded to each of its notes.  At the very least, petitioner has failed to show that the

9    trial court's responses was erroneous or violated due process.  <u>See id.</u>  Accordingly, the state

10   court's decision rejecting these claims was not contrary to or an unreasonable application of

11   clearly established federal law.  28 U.S.C. § 2254(d).

12          5.      <u>Failure to give complete instructions on aiding and abetting</u>

13          Petitioner claims that the trial court erred in failing to sua sponte instruct the jury that in

14   order to convict him of aiding and abetting, it cannot convict him of any crime that occurred

15   before he joined.  Essentially, petitioner argues that the jury should have been instructed that

16   because some of the crimes, i.e., murder and attempted murder, may have occurred before

17   petitioner committed any criminal act, petitioner could not be convicted of aiding or abetting

18   those prior crimes.  (Petition, Attachment H.)  Alternatively, petitioner claims that counsel was

19   ineffective for failing to request the instruction.

20          The California Court of Appeal rejected this claim.  It stated that because the prosecution

21   was relying on a "natural and probable consequences" doctrine, the trial court had a duty to sua

22   sponte identify for the jury the target crime that petitioner assisted in, i.e., shooting from a

23   vehicle, which the trial court did.  (Resp. Ex. A at 8.)  Nevertheless, the state appellate court

24   concluded that petitioner waived his claim by failing to object to it at trial.  (<u>Id.</u>)  Alternatively,

25   the state appellate court addressed petitioner's claim that counsel was ineffective for failing to

26   request a "late joinder" instruction and rejected it as well.  The state appellate court reasoned that

27   even if counsel had requested such an instruction, it would not have been warranted because the

28   evidence did not support petitioner's desire to be an after-the-fact accomplice to the shooting.

1  (Id. at 9-10.)

2  A state trial court's refusal to give an instruction does not alone raise a ground cognizable

3  in a federal habeas corpus proceedings.  See Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir.

4  1988).  The error must so infect the trial that the defendant was deprived of the fair trial

5  guaranteed by the Fourteenth Amendment.  See id.  Due process does not require that an

6  instruction be given unless the evidence supports it.  See Menendez v. Terhune, 422 F.3d 1012,

7  1029 (9th Cir. 2005).  Moreover, a state court's finding that evidence does not support a defense

8  theory is entitled to a presumption of correctness.  Id.

9  Here, petitioner does not provide any rebuttal to the state court's conclusion that the

10  evidence did not support an after-the-fact accomplice theory.  Petitioner does not refute that the

11  evidence at trial demonstrated that "the shooting was one continuous transaction, during which

12  Williams discharged a fusillade of bullets from his handgun and [petitioner] attempted to blast

13  out the back tires on the victim's vehicle, and at the conclusion of which Stephanie Franklin sat

14  in the passenger seat, still strapped into her seat belt, shot dead by a bullet to the heart." (Resp.

15  Ex. A at 9.)  According to California law, petitioner was not entitled to such an instruction.

16  Thus, there was no error, much less constitutional error.  Relatedly, because the court concludes

17  that the petitioner has not demonstrated state or constitutional error, counsel could not have

18  rendered ineffective assistance for failing to request a late-joinder instruction.

19  Petitioner is not entitled to habeas relief on this claim.

20  6.    "Natural and Probable Consequences" instruction

21  Petitioner claims that the jury instruction on natural and probable consequences[3] relieved

22

23  [3]   The instruction, CALJIC 3.02, states:

24  One who aids and abets another in the commission of a crime is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted.

25  In order to find the [petitioner] guilty of the crimes of murder and attempted murder, as

26  charged in Counts 1, 2, 3, and 4, you must be satisfied beyond a reasonable doubt that:

27  (1) The crime of shooting from a vehicle in violation of Penal Code Section 12034(d) was committed, and

28  (2) That the [petitioner] aided and abetted that crime;
   (3) That a co-principal in that crime committed the crimes of murder and attempted

1    the prosecution from proving all the elements of murder, namely, malice and intent.

2        The California Court of Appeal rejected petitioner's claim, recognizing that it was bound

3    by the California Supreme Court's decision foreclosing such assertions in People v. Coffman, 34

4    Cal. 4th 1, 106-108 (2004).  (Resp. Ex. A at 11-12.)

5        The Due Process Clause of the Fourteenth Amendment protects the accused against

6    conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

7    crime with which he or she is charged.  In re Winship, 397 U.S. 358, 364 (1970).  This

8    constitutional principle prohibits the State from using evidentiary presumptions in a jury charge

9    that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt

10   of every essential element of a crime.  See Yates v. Evatt, 500 U.S. 391, 400-03 (1991).

11       CALJIC 3.02 correctly stated California law on the intent requirement for aiding and

12   abetting liability under the natural and probable consequences doctrine.  See People v. Coffman,

13   34 Cal. 4th at 1, 106-108 (2004).  The California Court of Appeal's finding is entitled to

14   deference in this habeas proceeding.  See Bradshaw v. Richey, 564 U.S. 74, 76 (2005) (per

15   curiam) ("a state court's interpretation of state law, including one announced on direct appeal of

16   the challenged conviction, binds a federal court sitting in habeas corpus").  Moreover, the Ninth

17   Circuit has previously concluded that CALJIC 3.02 does not violate due process.  See, e.g., Solis

18   v. Garcia, 219 F.3d 922, 926-927 (9th Cir. 2000) (Winship rule not violated where jury was

19   given instructions on liability under the natural and probable consequences doctrine that

20   included all elements of second degree murder, even though jury was not given instructions on

21   the target crime of second degree murder which defendant allegedly committed as an aider and

22   _____

23   murder; and
         (4) The crimes of murder and attempted murder were a natural and probable consequence

24   of the commission of the crime of shooting from a vehicle in violation of Penal Code Section
     12034(d).

25       In determining whether a consequence is "natural and probable," you must apply an

26   objective test, based not on what the [petitioner] actually intended, but on what a person of
     reasonable and ordinary prudence would have expected likely to occur.  The issue is to be

27   decided in light of all the circumstances surrounding the incident.  A "natural" consequence is
     one which is within the normal range of outcomes that may be reasonably expected to occur if

28   nothing unusual has intervened.  "Probable" means likely to happen.

1  abettor); <u>Windham v. Merkle</u>, 163 F.3d 1092, 1104 (9th Cir. 1998) (CALJIC 3.02, concerning

2  aider and abettor's liability for the natural and probable consequences of cohorts' actions, does

3  not shift the burden of proving the requisite intent for the contemplated offense); <u>Spivey v.</u>

4  <u>Rocha</u>, 194 F.3d 971, 976-77 (9th Cir.1999) (rejecting petitioner's claim that CALJIC No. 3.02

5  relieved the prosecution of its burden of proving, beyond a reasonable doubt, that petitioner had

6  the requisite mental state to satisfy the elements of the crime of second degree murder, including

7  malice aforethought).

8        Significantly, petitioner cites no clearly established Supreme Court precedent

9  undermining the validity of California's natural and probable consequences doctrine on the basis

10 that it fails to provide for a separate assessment of the aider and abettor's intent vis-a-vis the

11 resulting crime, i.e., murder, as opposed to the assessment required of his intent as to the target

12 crime, i.e., shooting from a vehicle.  This court is unaware of any such precedent.  As there is no

13 clearly established federal law supporting this argument, the state court's rejection of this claim

14 cannot be contrary to, or an unreasonable application of, clearly established Supreme Court

15 precedent.  <u>See</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 77 (2006).

16        7.    <u>Failure to resolve mental incompetency issue</u>

17        Petitioner claims that the trial court failed to resolve a mental competency issue that arose

18 at sentencing, which violated his right to due process.  Petitioner alleges that he had been taking

19 psychiatric medication prior to and during trial which "could have played a major part" in

20 petitioner's decision-making and affected the outcome of trial.  (Petition, Attachment E at 2.)

21 Petitioner states that the trial court had a duty to order a competency hearing.  (<u>Id.</u>)

22        At sentencing on August 18, 2006, defense counsel informed the jury that petitioner

23 called his office the week before and indicated that he had been on a variety of medication

24 during trial and the medications affected petitioner's decisions.  (RT 850-851.)  The trial court

25 inquired whether petitioner ever mentioned this before or acted as if he did not understand

26 anything counsel had said to him.  (RT 851.)  Counsel responded that he did not, and the court

27 indicated that it did not notice anything either.  (<u>Id.</u>)  The court denied petitioner's request for a

28 new trial and suggested that if petitioner wanted to explore the issue further, that he do so on

1   appeal.  (RT 851-82.)

2         The California Supreme Court denied this claim without comment.

3         The test for competence to stand trial is whether the defendant demonstrates the ability

4   "to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as

5   well as factual understanding of the proceedings against him."  Godinez v. Moran, 509 U.S. 389,

6   396 (1993).  Due process requires a trial court to order a psychiatric evaluation or conduct a

7   competency hearing sua sponte if the court has a good faith doubt concerning the defendant's

8   competence.  Pate v. Robinson, 383 U.S. 375, 385 (1966).  A good faith doubt about a

9   defendant's competence arises if "'a reasonable judge, situated as was the trial court judge

10  whose failure to conduct an evidentiary hearing is being reviewed, should have experienced

11  doubt with respect to competency to stand trial.'"  Maxwell v. Roe, 606 F.3d 561, 568 (9th Cir.

12  2010) (quoting Kaplany v. Enomoto, 540 F.2d 975, 983 (9th Cir. 1976) (en banc)).  "In

13  reviewing whether a state trial judge should have conducted a competency hearing, we may

14  consider only the evidence that was before the trial judge."  McMurtrey v. Ryan, 539 F.3d 1112,

15  1119 (9th Cir. 2008).  "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and

16  any prior medical opinion on competence to stand trial are all relevant in determining whether

17  further inquiry is required," and "one of these factors standing alone may, in some

18  circumstances, be sufficient."  Maxwell, 606 F.3d at 568 (internal quotations omitted).

19        Here, both defense counsel and the prosecutor stated that they did not notice any strange

20  or irrational behavior from petitioner throughout trial.  The trial court noted that it also did not

21  notice anything out of the ordinary, and in fact, the prosecutor observed petitioner taking notes

22  during trial, discussing matters with counsel, and weighing the costs and benefits of testifying

23  with counsel.  Although petitioner attaches to his petition a variety of medical notes from his

24  detention at the Santa Rita jail, it appears that none of these notes were presented to the trial

25  court.  (Petition, Exs. M - Q.)  The only document presented to the trial court was a letter from a

26  social worker at the jail stating that petitioner was currently being prescribed medication for

27  Impulse Control Disorder, although the letter did not explain when or for how long petitioner

28  had been prescribed the medication.  (Petition, Ex. R.)  Thus, the petitioner's demeanor and

1  behavior throughout trial, the letter by the social worker, and the argument at sentencing were

2  the only evidence considered by the trial court and therefore, the only evidence this court is to

3  consider in determining whether the trial court should have ordered a competency hearing.  See

4  McMurtrey, 539 F.3d at 1119; Amaya-Ruiz v. Stewart, 121 F.3d 486, 493 (9th Cir. 1997).  A

5  review of such evidence shows no reason why the trial court should have had a good faith doubt

6  regarding petitioner's competence.[4]  See Maxwell, 606 F.3d at 568.  Especially in light of the

7  highly-deferential standard this court must give to the state court's factual finding, see id. at 567-

8  68, the state court's decision rejecting this claim was not contrary to or an unreasonable

9  application of clearly established federal law.  28 U.S.C. § 2254(d).

10         8.     Ineffective assistance of appellate counsel

11         Petitioner claims that appellate counsel rendered ineffective assistance of counsel

12  because he failed to raise the issues of prosecutorial misconduct for presenting false testimony,

13  prosecutorial misconduct for offering his personal opinion, and ineffective assistance of trial

14  counsel for failing to call an expert witness to testify about coerced confessions.

15         Claims of ineffective assistance of appellate counsel, although technically due process

16  claims, are reviewed according to the standard set out in Strickland v. Washington, 466 U.S. 668

17  (1984).  See Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  A defendant therefore must

18  show that counsel's representation did not meet an objective standard of reasonableness and that

19  there is a reasonable probability that, but for counsel's unprofessional errors, he would have

20  prevailed on appeal.  See id. at 1434 & n.9 (citing Strickland, 466 U.S. at 688, 694; U.S. v.

21  Birtle, 792 F.2d 846, 849 (9th Cir. 1986)).

22         It is important to note that appellate counsel does not have a constitutional duty to raise

23  every nonfrivolous issue requested by defendant.  See Jones v. Barnes, 463 U.S. 745, 751-54

24  (1983).  The weeding out of weaker issues is widely recognized as one of the hallmarks of

25  _____

26         [4]  The court notes that the medical documents submitted by petitioner (Exs. M - Q)
    include notes that:  petitioner was feeling depressed and anxious about having been charged with
27  the underlying crimes (Ex. M), was prescribed benadryl (Exs. N, O), showed signs of depression
    and sleep deprivation (Exs. N, O), was prescribed zyprexa at his own request (Ex. O); and
28  showed signs of impulse control disorder (Exs. O, P, Q).

1  effective appellate advocacy.  See Miller, 882 F.2d at 1434.  Appellate counsel therefore will

2  frequently remain above an objective standard of competence and have caused his client no

3  prejudice for the same reason – because he declined to raise a weak issue.  Id.

4      Petitioner's claim is without merit.  As discussed above, there is no merit to petitioner's

5  claims of prosecutorial misconduct or ineffective assistance for failing to call an expert witness

6  regarding coerced confessions.  Therefore, appellate counsel's failure to raise the issue on appeal

7  could not have resulted in prejudice to petitioner.  Furthermore, because the underlying claims

8  are without merit, the weeding out by appellate counsel may constitute an instance of effective

9  advocacy, as defined in Miller.  Thus, this claim is denied.

10      9.    Cumulative error

11      Petitioner claims that as a result of all his allegations, the cumulative effect of the errors

12  warrants habeas relief.  In some cases, although no single trial error is sufficiently prejudicial to

13  warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much

14  that his conviction must be overturned.  See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir.

15  2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to

16  challenge every important element of proof offered by prosecution).  However, where as here,

17  there is no single constitutional error existing, nothing can accumulate to the level of a

18  constitutional violation.  See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).

19                          **CONCLUSION**

20      For the reasons set forth above, the court concludes that petitioner has failed to show a

21  violation of his federal constitutional rights in the underlying state criminal proceedings.

22  Accordingly, the petition for writ of habeas corpus is DENIED.  The clerk shall close the file.

23                  **CERTIFICATE OF APPEALABILITY**

24      The federal rules governing habeas cases brought by state prisoners have been amended

25  to require a district court that denies a habeas petition to grant or deny a certificate of

26  appealability ("COA") in its ruling.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C.

27  foll. § 2254.  For the reasons set out in the discussion above, petitioner has not shown "that

28  jurists of reason would find it debatable whether the petition states a valid claim of the denial of

1   a constitutional right [or] that jurists of reason would find it debatable whether the district court

2   was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

3   Accordingly, a COA is DENIED.

4        IT IS SO ORDERED.

5   DATED: __7/30/10_____

6                                        _____
                                         RONALD M. WHYTE
                                         United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28